(No. 22653.—

THE PEOPLE *ex rel.* Roy A. Maypole, Plaintiff in Error, *vs.* WILLIAM D. MEYERING, Sheriff, Defendant in Error.

*Opinion filed December 19, 1934.*

NORTHUP & BEARDSLEY, for plaintiff in error.

OTTO KERNER, Attorney General, THOMAS J. COURTNEY, State's Attorney, and J. J. NEIGER, (EDWARD E. WILSON, HENRY E. SEYFARTH, and JAMES V. CUNNINGHAM, of counsel,) for defendant in error.

Mr. JUSTICE SHAW delivered the opinion of the court:

The relator, Roy A. Maypole, was arrested in Chicago by the respondent, sheriff of Cook county, upon a rendition warrant issued by the Governor of Illinois on requisition from the Governor of Ohio. Having filed his petition for *habeas corpus* in accordance with the statute, a return was made setting up the Governor's rendition warrant, and the cause was heard upon petition and return. Upon this hearing the rendition warrant and the supporting documents upon which it was issued were introduced in evidence. From these it appears that an indictment was returned in the court of common pleas of Cuyahoga county, Ohio, charging Henry Burke with burning a building on November 30, 1931, for the purpose of defrauding. The title of the cause was, "The State of Ohio *vs.* Henry Burke." A copy of this indictment, duly certified, was attached to the requisition. There was also attached to the requisition a written request from the prosecuting attorney of Cuyahoga county, directed to the Governor of Ohio, asking for a requisition upon the Governor of Illinois for the ap-

prehension and rendition of "Roy Maypole, alias Henry Burke." The requisition from the Governor of Ohio to the Governor of Illinois followed the request of the prosecutor and asked for the apprehension and rendition of "Roy Maypole, alias Henry Burke." Upon the hearing on *habeas corpus,* James P. Hart, a witness called by the relator, testified that he was an employee of the county attorney at Cleveland, Ohio, and that he had never seen Burke in Cleveland. He further testified that the manager of the building claimed to have been burned had been with him in the corridor of Judge Finnegan's court room on Friday of the week before the hearing then being held and that he was there with the witness at the time the witness testified. After this testimony a request was made that Max Felsman, manager of the building which had been burned, be called as the court's witness, the relator's attorney stating that he did not care to be bound by his testimony. This the court declined to do. The relator then testified in his own behalf, stating that he lived at a given address in Chicago and had lived there for about one and a half years; that prior thereto he had lived in Detroit for ten years; that he was a development engineer for the Pines Winterfront Company, owning patents on some articles being manufactured by that concern. The witness further testified that he had developed the first sound equipment for talking pictures made by any independent concern, and that he had traveled through the various States, with men working for him, trying to establish his product; that he had been in Cleveland in 1931 and in many other years, and had been there in the late fall of that year but could not remember the exact date. In his direct examination he stated that he had never been known by the name of Burke and denied that he had ever worked as a night watchman, either in the burned building or at any other place. He was not cross-examined on these points and the respondent offered no evidence at all, leav-

ing the relator's testimony entirely uncontradicted and unimpeached. Felsman, the manager of the building alleged to have been burned, and who appears from the record to have been in court during the hearing, was not called to the stand. The trial court remanded the prisoner, and this statutory writ of error is sued out to reverse that judgment.

This record presents certain questions which appear to be of first impression in this court and as to which but little of authority has come to our attention. These questions may be stated as follows: (1) Has the Governor of a demanding State any power to insert in a requisition any name other than, or in addition to, that appearing in the indictment or affidavit upon which the demand is based? (2) If such other or additional name is added and the person arrested denies under oath that he is the identical person indicted and requisitioned, upon whom rests the burden of proof on the question of identity?

*Johnston* v. *Riley,* 13 Ga. 97, was a case which involved consideration of a question identical to that first stated above, except that it was the governor of the asylum instead of the Governor of the demanding State who made the insertion of the alias or alternate name. The requisition in that case was from the Governor of Pennsylvania to the Governor of Georgia for the rendition of Robert J. Williams. On this request the Governor of Georgia issued his rendition warrant for "Robert J. Williams, alias Spencer Riley." The question arose on an action for false imprisonment, and the court stated in its opinion that as a distinct legal proposition the Governor of Georgia had no right to insert the alias. The court stated in the opinion, however, that the insertion of the alias was not necessary to authorize the arrest of Riley, "if, indeed, he was the same individual who committed the forgery," and then added: "But the person making the arrest would have taken the responsibility of proving the identity of the person so arrested."

The Supreme Court of Wyoming, in *Ryan* v. *Rogers,* 132 Pac. 95, had occasion to discuss the *Riley case, supra,* on facts somewhat similar to but not identical with either those in the *Riley case* or in the one now before this court. In that case the Governor of Illinois had issued his requisition to the Governor of Wyoming for the apprehension of "Charles T. Crane, otherwise called James Ryan." In addition to a certified copy of an indictment returned by the grand jury of Cook county, Illinois, the requisition was accompanied by an affidavit before a magistrate charging the defendant by both names—*i. e.,* "Charles T. Crane, otherwise called James Ryan." The Wyoming court found it unnecessary to determine whether or not the alias was properly inserted by the Governor, pointing out that it would be immaterial if, in fact, the person arrested was the identical person intended to be charged by the indictment, which in that case was proved.

It must be conceded, as argued by the respondent, that ordinarily a Governor's warrant which is regular on its face makes a *prima facie* case against the person named therein. (*McNichols* v. *Pease,* 207 U. S. 100, 52 L. ed. 121, 28 Sup. Ct. 58; *People* v. *Meyering,* 355 Ill. 456.) It must be remembered, however, that the Governor's warrant is not the entire proceeding but merely a step in the process of extradition, and its effect may be limited, impaired, or even destroyed, by the non-existence or impropriety of other necessary procedural matters. Obviously, a Governor could not issue a rendition warrant without a requisition from the Governor of another State, nor could that Governor issue his requisition without an indictment returned or an affidavit executed before a magistrate in accordance with the act of Congress. (U. S. Rev. Stat. 5278.) Upon principle it must follow that neither Governor can insert in the requisition or warrant any name or names other than appear on the face of the indictment or affidavit which constitutes the foundation for the requisition. Upon

principle, as well as upon authority, it is also clear that the name in the warrant is immaterial if the person arrested is, in fact, the identical person indicted or intended to be charged in the demanding State, the only effect of such an error or unauthorized act being to shift the burden of proof to the respondent as to identity.

In the case we are now considering, the respondent, had he seen fit, could have made return that the relator was as well known under the name of Henry Burke as that of Roy Maypole, and upon proof of such return a remandment would have been proper, whereas the record before us does not justify a remand. Not only was the Governor of Ohio without authority to insert the name "Roy Maypole" in his requisition nor the Governor of Illinois to put it in his warrant, but the record made on the hearing disproved any identity of parties. An assistant to the prosecuting attorney for Cuyahoga county, Ohio, was present and testified. The manager of the building claimed to have been burned was also present in court but did not testify. No one appeared to offer any evidence that Roy Maypole was the same person as Henry Burke, and his testimony that he had never been known by the name of Burke stands in the record uncontradicted, reasonable and unimpeached. It has been held by the highest authority that each State has a right to protect its citizens from extradition except in such cases as bring them within the constitutional provision and the act of Congress in respect thereto, and that *habeas corpus* is an appropriate remedy for that purpose. *McNichols* v. *Pease, supra.*

Upon this record the relator should have been discharged, and an order discharging him will be entered in this court. *Judgment reversed and relator discharged.*